|   | UNITED STATES DISTRICT COURT |   |
|---|---|---|
|   | DISTRICT OF NEVADA |   |
| THE BANK OF NEW YORK MELLON, | | Case No.: 2:16-cv-00370-APG-BNW |
| Plaintiff | | **Order (1) Granting in Part Parkside's Motions; (2) Denying Bank of New York Mellon's Motion; and (3) Granting in Part Williston's Motion** |
| v. | | |
| NEVADA ASSOCIATION SERVICES, INC.; PARKSIDE VILLAGE HOMEOWNERS' ASSOCIATION; and WILLISTON INVESTMENT GROUP LLC, | | [ECF Nos. 44, 48, 51, 52] |
| Defendants | | |

This is a dispute over whether a deed of trust still encumbers property located at 8124 Jasmine Hollow Court, Las Vegas, Nevada. Plaintiff Bank of New York Mellon (BONY) seeks a judicial determination that its deed of trust still encumbers the property following a non-judicial foreclosure sale conducted by defendant Parkside Village Homeowners' Association after the prior property owners failed to pay homeowners association (HOA) assessments. Defendant Williston Investment Group LLC purchased the property at the HOA foreclosure sale.

BONY seeks a declaration that the deed of trust was not extinguished because the HOA and its foreclosure agent, defendant Nevada Association Services, Inc. (NAS), failed to provide proper notice of the sale; the HOA foreclosure statute as it existed at the time of the HOA sale was unconstitutional; BONY's predecessor offered to pay the superpriority lien prior to the sale; and the sale should be set aside on equitable grounds. BONY also asserts damages claims against Parkside and NAS for breach of Nevada Revised Statutes § 116.1113, wrongful foreclosure, and deceptive trade practices. Williston counterclaims for a declaration that the HOA sale extinguished the deed of trust.

Parkside moves to dismiss and for summary judgment. Williston and BONY also move for summary judgment. The parties are familiar with the facts, and I will not repeat them here except where necessary to resolve the motions. I grant in part Williston and Parkside's motions. I deny BONY's motion.

## I. LEGAL STANDARDS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

(9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**II. ANALYSIS**

    **A. Determining Adverse Interests in Property**

Count one of BONY's complaint and Williston's counterclaim seek to determine whether BONY's deed of trust was extinguished by the HOA foreclosure sale. The parties raise numerous issues regarding this claim, including the applicable statute of limitations, tender, whether the sale was for a superpriority or subpriority amount, whether the sale should be equitably set aside, due process, and who are proper parties to the claim.

    *1. Statute of Limitations*

Parkside argues BONY's claim is untimely because it is subject to either a 45- or 60-day limitation period under Nevada Revised Statutes § 107.080. Williston contends BONY's claim is untimely because it is subject to a three-year limitation period as either a claim for liability created by statute or as equivalent to wrongful foreclosure. BONY contends its claim is not subject to any limitation period or alternatively is subject to a 5- or 10-year limitation period.

I have previously ruled that the four-year catchall limitation period in Nevada Revised Statutes § 11.220 applies to claims brought by a lienholder seeking to determine whether an HOA sale extinguished its deed of trust. *See Bank of Am., N.A. v. Country Garden Owners Ass'n*, No. 2:17-cv-01850-APG-CWH, 2018 WL 1336721, at *2 (D. Nev. Mar. 14, 2018). In doing so, I rejected arguments similar to those Williston and BONY make for shorter or longer periods.

Parkside provides no authority for the proposition that the timelines in § 107.080 apply to a challenge to an HOA foreclosure sale under Chapter 116. That section refers to foreclosures of deeds of trust, not HOA liens. Nev. Rev. Stat. § 107.080(1). I therefore apply the four-year catchall limitation period to this claim.

The HOA sale was conducted on March 16, 2012, and the deed upon sale was recorded on February 1, 2013. ECF No. 50-9. BONY filed this lawsuit on February 23, 2016. ECF No. 1. Thus, even using the earlier date of the HOA sale, BONY's claim is timely. Accordingly, I deny Parkside and Williston's motions based on the statute of limitations as to this claim.

*2. Tender*

Under Nevada law, a "first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). To be valid, tender must be for "payment in full" and must either be "unconditional, or with conditions on which the tendering party has a right to insist." *Id.* at 118. "[A] promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender." *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1219 (Nev. 2019) (holding that an "offer to pay the yet-to-be-determined superpriority amount was not sufficient to constitute a valid tender"). But tender is excused if the payment would not have been accepted. *Id.* at 1220 (holding that tender was excused where testimony established the HOA's agent would have rejected tender).

Here, no genuine dispute remains that Bank of America's letter did not constitute tender because Bank of America offered to pay the superpriority amount in the future once that amount

////

was determined, but it did not tender payment.[1] ECF No. 50-8. BONY argues that tender is nevertheless excused because NAS would not have accepted the payment if it had been made. BONY does not present deposition testimony, affidavits, admissions, or answers to interrogatories in which NAS or Parkside state whether they would (or would not) have accepted payment on this property if Bank of America had tendered payment.

Instead, BONY relies on a brief filed in an arbitration proceeding to which NAS was a party. *See* ECF Nos. 50-12; 50-13. That brief, which NAS joined in September 2012, made arguments about when a superpriority lien was triggered, what was included in the superpriority lien, and whether lienholders could pay off the superpriority amount. Viewing the facts in the light most favorable to Williston and Parkside on BONY's motion for summary judgment, questions of fact remain about whether NAS would have accepted tender. The brief was filed six months after the HOA foreclosure sale in this case. Thus, it may or may not reflect NAS's position generally or in particular with respect to this property during the time period leading up to the March 2012 sale. Additionally, neither the brief nor NAS's joinder specifically states that NAS would have automatically rejected a tender of nine months' worth of assessments for this property during the relevant timeframe.[2]

---

[1] Williston argues BONY failed to present evidence that NAS received the letter. BONY presented evidence that the letter was mailed, and in its reply BONY presented evidence that NAS received it. ECF Nos. 50-8; 59-1.

[2] BONY presents additional evidence in its reply brief. That evidence should have been presented in BONY's initial motion if it wanted to establish entitlement to judgment on the basis of that evidence. But even if I considered it, it does not establish BONY's entitlement to judgment as a matter of law. The trial testimony of NAS corporate counsel Chris Yergensen in another case does not establish that NAS would not have accepted payment of nine months' worth of assessments at the time of this foreclosure sale. Rather, Yergensen testified that NAS stopped responding to requests for the payoff amount. ECF No. 59-3. No one asked, and Yergensen did not say, whether in early 2012 NAS would have accepted payment of nine months' worth of assessments. *Id.*; *see also* ECF No. 59-2. He testified that sometimes the lenders would calculate the amount of nine months' worth of assessments and send a check in

5

However, viewing the facts in the light most favorable to BONY, a genuine dispute remains as to whether tender would have been futile. A reasonable jury could conclude that NAS would not have accepted payment of nine months' worth of assessments and instead would have accepted payment of only the total amount of the HOA's lien based on NAS's position six months later that the superpriority lien includes costs of collecting. I therefore deny all parties' motions on the tender issue.

*3. Superpriority or Subpriority Sale*

BONY argues that NAS foreclosed on only the subpriority portion of the HOA's lien, as evidenced by NAS's belief that the superpriority lien was not triggered until the lender foreclosed on the deed of trust and by how NAS distributed the sale proceeds. Williston responds that NAS's after-the-fact beliefs or actions cannot alter the legal effect of the sale, which indisputably contained non-waivable superpriority amounts.

Even if an HOA can choose to foreclose on only the subpriority portion of its lien when the superpriority lien remains unsatisfied, BONY has not presented evidence raising a genuine dispute that the HOA was foreclosing on only a subpriority lien in this case. BONY has not pointed to evidence that the superpriority amount was excluded from the HOA lien amounts set forth in the foreclosure notices. *Cf. Saticoy Bay LLC, Series 346 S Milan St. v. MetLife Home Loans, LLC*, No. 74386, 437 P.3d 168, 2019 WL 1244785, at *1 (Nev. 2019) (holding no genuine dispute that there was no superpriority lien where the "record contains undisputed evidence that the lien asserted in the notice of delinquent assessments was for interest, late charges, management company fees, collection fees, and collection costs and that the former

---

that amount. ECF No. 59-3 at 57-58, 74-75. But he did not state whether NAS would cash those checks.

6

homeowner owed no past-due HOA assessments at that time"). Rather, BONY concedes the former homeowners did not pay assessments and that the HOA lien was comprised of unpaid assessments, "with the necessary implication being that the HOA's lien included a superpriority component." *PennyMac Corp. v. SFR Investments Pool 1, LLC*, No. 73405, 425 P.3d 719, 2018 WL 4413612, at *3 (Nev. 2018); ECF Nos. 50 at 3; 50-5.

Nor is there any evidence that it was announced at the sale that only the subpriority lien was being foreclosed. NAS's subjective beliefs about the legal effect of the sale or its post-sale distribution of proceeds are irrelevant to the sale's actual legal effect. *See Wells Fargo Bank, N.A. on behalf of Holders of HarborView Mortg. Loan Tr. Mortg. Loan Pass-Through Certificates, Series 2006-12 v. Radecki*, 426 P.3d 593, 596-97 (Nev. 2018) (en banc). I therefore deny BONY's motion for summary judgment on this basis.

### 4. Equitably Set Aside the Sale

BONY argues the sale should be set aside on equitable grounds because Williston paid a grossly inadequate price and the sale was unfair where (1) Bank of America tried to pay the superpriority amount but NAS would not state what that amount was and (2) NAS told Bank of America that its deed of trust was secure. Williston responds that BONY has not shown an inadequate price because the price Williston paid was the fair market value fetched at a non-collusive foreclosure sale. Williston also argues that BONY has not shown that any unfairness brought about the allegedly low price.

BONY bears the burden of showing "that the sale should be set aside in light of [Williston's] status as the record title holder . . . and the statutory presumptions that the HOA's foreclosure sale complied with NRS Chapter 116's provisions." *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 642-43 (Nev. 2017). "[M]ere

inadequacy of price is not in itself sufficient to set aside the foreclosure sale, but it should be considered together with any alleged irregularities in the sales process to determine whether the sale was affected by fraud, unfairness, or oppression." *Id.* at 648. "A grossly inadequate price may require only slight evidence of fraud, unfairness, or oppression to set aside a foreclosure sale." *SFR Investments Pool 1, LLC v. First Horizon Home Loans, a Div. of First Tennessee Bank, N.A.*, 409 P.3d 891, 895 (Nev. 2018) (en banc). However, the fraud, unfairness, or oppression must have "affected the sales price." *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 161 (Nev. 2019) (en banc).

BONY has not presented evidence raising a genuine dispute that any fraud, unfairness, or oppression affected the sale price. BONY has not explained how Bank of America's attempted tender or NAS's allegedly misleading conduct affected the price at the foreclosure sale. BONY has not, for example, presented evidence that Bank of America did not attend the sale or bid on the property in reliance of either the tender attempt or NAS's representations. And BONY has not presented evidence that any other bidder was deterred from bidding or bid less on these bases. I therefore deny BONY's motion and grant Parkside and Williston's motions that the sale will not be set aside on equitable grounds.

*5. Due Process*

BONY argues Chapter 116 as it existed at the time of this sale violated its due process rights because it did not require the HOA to inform Bank of America the amount of the superpriority lien, that the deed of trust was at risk, or how to protect the deed of trust. Alternatively, BONY argues its due process rights were violated as applied because when Bank of America asked for the superpriority amount, NAS did not respond. BONY contends it "did everything it possibly could" and so the sale violates due process because BONY could not

identify the superpriority amount and pay it in advance. ECF No. 50 at 2.  BONY also argues requiring the lender to pay the full lien amount and then seek a refund requires it to do more than is necessary to preserve its lien and is unconstitutional because there is no clear and certain remedy for a refund.  Parkside and Williston argue that the Supreme Court of Nevada has previously rejected BONY's due process arguments.  Williston also contends that BONY received actual notice through the HOA's foreclosure notices and those notices complied with due process.

To the extent BONY's due process claim is based on the reasoning of *Bourne Valley Court Trust v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016) or the content of the notices, I grant Williston and Parkside's motions and deny BONY's motion. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623-24 (9th Cir. 2019) (citing *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, 422 P.3d 1248 (Nev. 2018) (en banc)); *Nationstar Mortg. LLC v. Amber Hills II Homeowners Ass'n*, No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *6-9 (D. Nev. Mar. 31, 2016).

As for BONY's as-applied challenge, it is not actually a challenge to the statute.  The statute says nothing about whether an HOA or its agent must respond to a request for the superpriority amount.  In any event, BONY fails to raise a genuine dispute for an as-applied due process violation.  To prevail on a procedural due process claim, BONY must allege and prove "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  "The fundamental requirements of procedural Due Process are notice and an opportunity to be heard . . . ." *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492 (9th Cir. 1990) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

BONY or its predecessor or agent received the foreclosure notices. ECF No. 54 at 18-19. BONY thus had notice that its deed of trust was in jeopardy, and it had an opportunity to take action to protect its deed of trust. BONY notes that it tried to do so through contacting NAS for the superpriority amount and NAS did not respond. But that is only one avenue by which BONY could have protected its interest. BONY could have sued to determine the superpriority amount or attended the HOA sale and bid on the property. Alternatively, BONY could have paid the entire lien amount and sued for a refund. BONY contends suing for a refund was not an available option because the statute provided no clear and certain remedy for a refund. I have previously rejected a similar argument based on the alleged lack of a clear and certain refund remedy. *Amber Hills II Homeowners Ass'n*, 2016 WL 1298108, at *8-9.

Because BONY had notice and an opportunity to protect its interest, no genuine dispute remains. *See Bank of New York Mellon Tr. Co., N.A. v. Legends Maint. Corp.*, No. 2:16-cv-02567-MMD-GWF, 2019 WL 2176913, at *4 (D. Nev. May 17, 2019) (rejecting similar as-applied arguments); *Carrington Mortg. Servs., LLC v. Tapestry at Town Ctr. Homeowners Ass'n*, No. 2:17-cv-01047-RFB-PAL, 2019 WL 1441612, at *5 (D. Nev. Mar. 31, 2019) (same). I therefore deny BONY's motion and grant Parkside and Williston's motions on the as-applied due process allegations.

### *6. Proper Party*

Parkside argues that it is not a proper party to BONY's declaratory relief claim because it does not claim an interest in the property. Parkside would be a proper party if there was a basis to set aside the sale because its superpriority lien potentially would be reinstated. *See Nationstar Mortg., LLC v. Sundance Homeowners Ass'n, Inc.*, No. 2:15-cv-01310-APG-GWF, 2016 WL

1259391, at *3 (D. Nev. Mar. 30, 2016). However, as there is no remaining basis to set aside the sale,[3] I grant Parkside's motion to dismiss it from the declaratory relief claim.

### B. Section 116.1113

Count two of BONY's complaint alleges that Parkside and NAS breached a duty of good faith under § 116.1113 to notify lenders that the deed of trust was at risk, to identify the superpriority amount, and to provide the lenders an opportunity to protect the deed of trust. ECF No. 1 at 11. Parkside moves to dismiss and for summary judgment, arguing that this claim is untimely because it is subject to either a 45- or 60-day limitation period under § 107.080. Alternatively, Parkside contends that BONY has not identified what contract or duty governed by Chapter 116 that Parkside breached. Parkside also argues that to the extent this claim is based on the content of the foreclosure notices, the Supreme Court of Nevada has ruled that the notices did not need to identify the superpriority amount. BONY responds[4] that Parkside sold the property for a grossly inadequate price and that Parkside (through NAS) wrongfully rejected tender, so it would be unfair for Parkside to sell the property free and clear of the deed of trust.

Assuming without deciding that this claim is timely, I grant Parkside's motions because BONY has not identified what statutory or contractual duty Parkside breached. The Supreme Court of Nevada has rejected the proposition that HOAs had to identify the superpriority amount in the foreclosure notices under the statutory scheme as it existed at the time of this sale. *See SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). To the extent BONY contends Parkside had a duty to identify the superpriority amount when Bank of America

---

[3] If BONY prevails on its tender allegations, the consequence will be that Williston took the property subject to the deed of trust. *See Bank of Am., N.A.*, 427 P.3d at 121. The sale thus will not be set aside even if BONY wins on tender.

[4] BONY did not move for summary judgment on this claim.

11

requested it, BONY does not point to any contractual or statutory provision that created a duty to do so. Finally, the Supreme Court of Nevada has rejected the notion that an HOA has a duty to obtain the highest price it could when conducting an HOA foreclosure sale. *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 644-45 (Nev. 2017). Thus, BONY's contention that the HOA sold the property for a grossly inadequate price does not amount to a breach of good faith under Chapter 116.

### C. Wrongful Foreclosure

Count three of BONY's complaint alleges that the foreclosure was wrongful to the extent it extinguished the deed of trust because Parkside failed to give adequate notice and opportunity to cure the superpriority lien, Parkside sold the property for a grossly inadequate amount, and Parkside violated its duty of good faith under § 116.1113. ECF No. 1 at 12. Parkside moves to dismiss and for summary judgment, arguing that this claim is untimely because it is subject to either a 45- or 60-day limitation period under § 107.080. Parkside contends that if the claim is timely, BONY lacks standing to assert it because BONY is not a mortgagor. Alternatively, Parkside contends BONY fails to establish there was no default because there is no dispute that the homeowner was in arrears on the HOA assessments. Finally, Parkside argues BONY has not identified what was wrongful about the foreclosure because Parkside complied with the HOA foreclosure statutes in conducting the sale, the notices did not have to identify the superpriority amount, and Parkside has never contended that its sale extinguished the deed of trust.

BONY responds[5] that either the limitation period has not begun to run or that this claim is subject to a six-year limitation period because it arises from the HOA's Covenants, Conditions, and Restrictions, which is an instrument in writing. Alternatively, BONY contends the limitation

---

[5] BONY did not move for summary judgment on this claim.

12

period should be equitably tolled because NAS had previously taken the position that the superpriority lien did not exist until the lender foreclosed on the deed of trust and because NAS did not respond to the request for the payoff amount. Finally, BONY argues that if Parkside foreclosed on the superpriority lien even after BONY's tender cured the default, then the foreclosure was wrongful. BONY contends it has standing and that it can show through the tender attempt that the superpriority lien was not in default.[6]

Assuming without deciding that this claim is timely, I grant Parkside's motions. As discussed elsewhere, there is no due process violation, the notices did not have to contain the superpriority amount, and Parkside did not have to obtain a certain price at the foreclosure sale. As for tender, BONY does not explain how it will recover damages against Parkside. If BONY prevails at trial on tender, then BONY's deed of trust will not be extinguished, so foreclosure of the HOA lien will not be wrongful as to BONY. If BONY does not prevail on tender, then BONY does not explain how the foreclosure would be wrongful as to it. Rather, the foreclosure would extinguish the deed of trust because BONY did not properly tender. To the extent BONY is relying on the fact that NAS did not respond to the request for the superpriority amount, as discussed above BONY has not identified any statutory or contractual duty that required NAS to respond. Nor has BONY cited any law that NAS's failure to respond would subject Parkside to damages for wrongful foreclosure.

**D. Deceptive Trade Practices**

Count five of BONY's complaint asserts that Parkside and NAS engaged in deceptive trade practices by (1) falsely representing the amount of the superpriority lien in the foreclosure

---

[6] BONY also argues that after the sale, Parkside incorrectly distributed the proceeds. Those allegations are not in the complaint and BONY cites no authority for the proposition that errors in post-sale distribution constitute wrongful foreclosure.

13

notices, (2) "falsely asserted the information contained in the recitals in the foreclosure deed," and (3) falsely represented that the superpriority lien was not paid in advance of the sale. ECF No. 1 at 14. BONY also alleges that recording the foreclosure notices and refusing to accept tender violated Nevada Revised Statutes §§ 598.0915(15), 598.092(8), and 598.0923(2)-(3). *Id.*

Parkside moves to dismiss and for summary judgment, arguing that this claim is untimely because it is subject to either a 45- or 60-day limitation period under § 107.080. Parkside also contends that BONY is not a consumer within the meaning of the Nevada Deceptive Trade Practices Act (NDTPA), as it is a sophisticated lending institution and it has not consumed or purchased any goods or services from Parkside. It also contends that real estate transactions such as non-judicial foreclosure sales do not constitute consumer goods or services and BONY is not a party to a transaction with Parkside.

BONY responds[7] that its claim is based on the sale of goods and services to the original borrower or lender because the HOA provides services to homeowners and lenders by enforcing the Covenants, Conditions, and Restrictions (CC&Rs) and maintaining the neighborhood, in exchange for which the homeowners pay HOA assessments and lenders make loans to homebuyers in the community. BONY contends that in providing these services to the lenders, Parkside falsely misrepresented what the superpriority lien was and obstructed tender of the superpriority amount.

### *1. Timeliness*

Parkside provides no authority for the proposition that an NDTPA claim is governed by the time limits in § 107.080. That section refers to foreclosures of deeds of trust, not HOA liens, nor does it reference the NDTPA. Nev. Rev. Stat. § 107.080(1). A deceptive trade practices

---

[7] BONY did not move for summary judgment on this claim.

14

claim is governed by a four-year limitation period. Nev. Rev. Stat. § 11.190(2)(d). Parkside made no arguments about whether BONY's claim is untimely under the proper limitation period. I therefore deny Parkside's motions on statute of limitations grounds.

### 2. Consumer Fraud

Nevada Revised Statutes § 41.600 creates a cause of action for a victim of "consumer fraud," which includes deceptive trade practices identified in § 598.0915 to § 598.0925. BONY's complaint relies on two statutory sections that apply to deceptive practices related to the sale or lease of goods or services. Nev. Rev. Stat. § 598.0923(2) (making it a deceptive practice to "knowingly . . . [f]ail[ ] to disclose a material fact in connection with the sale or lease of goods or services"); *id.* § 598.0923(3) (making it a deceptive practice to "knowingly . . . "[v]iolate[ ] a state or federal statute or regulation relating to the sale or lease of goods or services"). Because an HOA foreclosure sale is the sale of real estate, not goods or services, these sections have no application in this context. *See Bank of New York Mellon v. Log Cabin Manor Homeowners Ass'n*, 362 F. Supp. 3d 930, 939 (D. Nev. 2019); *The Bank of New York Mellon fka The Bank of New York v. Cape Jasmine CT Tr.*, No. 2:16-CV-0248-JAD-GWF, 2016 WL 3511253, at *4-5 (D. Nev. June 27, 2016). I therefore dismiss these allegations with prejudice.

However, other sections of Chapter 598 are not necessarily limited to transactions relating to the sale or lease of goods or services. *See Abernathy v. Cont'l Serv. Grp., Inc.*, No. 2:17-cv-00636-APG-NJK, 2018 WL 3370524, at *5 (D. Nev. July 9, 2018) (citing *Cape Jasmine CT Tr.*, 2016 WL 3511253, at *4-5). As relevant here, § 598.092(8) makes it a deceptive trade practice to "[k]nowingly misrepresent[ ] the legal rights, obligations or remedies of a party to a transaction." And § 598.0915(15) makes it a deceptive trade practice to "[k]nowingly make[ ]

15

any other false representation in a transaction." Because these two sections refer to a "transaction," rather than the sale or lease of goods or services, Parkside has not established that these sections could not apply to a real estate transaction like an HOA foreclosure sale.

Parkside contends, however, that BONY is not a "consumer" who can assert a claim under § 41.600 because it is a sophisticated lender and it is not a party to a transaction with Parkside. BONY does not specifically respond to these arguments, instead arguing its general theory that the HOA provides services to homeowners and lenders by enforcing the CC&Rs and in exchange the homeowners pay HOA assessments.

Section 41.600's plain language does not limit consumer fraud claims to unsophisticated plaintiffs or to a party to the transaction in which the deceptive trade practice occurs. Rather, § 41.600 permits "any person who is a victim of consumer fraud" to bring suit. Additionally, it defines consumer fraud by reference to deceptive practices set forth in other statutory sections. It is not apparent that each of those statutory sections requires the plaintiff to have been a party to the transaction in which the false representation was made to be a victim of the fraud. I therefore deny Parkside's motions because Parkside has not shown it is entitled to either dismissal or summary judgment on the basis of the arguments it has made.[8]

## III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Parkside Village Homeowners' Association's motions to dismiss and for summary judgment **(ECF Nos. 44, 52) are GRANTED in part.** The motions are granted as to plaintiff Bank of New York Mellon's claims for

---

[8] I do not consider the argument Parkside makes for the first time in its reply that securing or collecting debts does not constitute doing business in Nevada within the NDTPA's meaning. *See* ECF No. 60 at 8; *Vazquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("[W]e do not consider issues raised for the first time in reply briefs.").

16

declaratory relief, breach of § 116.1113, wrongful foreclosure, and deceptive trade practices based on §§ 598.0923(2)-(3). The motions are denied as to the remainder of the deceptive trade practices claim.

IT IS FURTHER ORDERED that plaintiff Bank of New York Mellon's motion for summary judgment **(ECF No. 51) is DENIED**.

IT IS FURTHER ORDERED that defendant Williston Investment Group LLC's motion for summary judgment **(ECF No. 48) is GRANTED in part**. The motion is granted as to the issues of equitably setting aside the sale and due process. The motion is denied as to the issues of timeliness and tender.

DATED this 10th day of June, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE