# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWMBS Inc., CHL Mortgage Pass-Through Certificates, Series 2004-12,

    Plaintiffs,,

  v.

Nevada Association Services, Inc.; Parkside Village Homeowners' Association; Williston Investment Group LLC; Does I through X, inclusive; and ROE corporations I through X, inclusive,

    Defendants.

─────────────────────────────

Williston Investment Group LLC,

    Counterclaimant,

  v.

The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWMBS Inc., CHL Mortgage Pass-Through Certificates, Series 2004-12,

    Counterdefendants.

Case No. 2:16-cv-370-APG-BNW

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF JUDGMENT**

On January 27, 2020 I conducted the bench trial in this case. Below are my findings and conclusions.

## FINDINGS OF FACT

1. On April 20, 2004, Herbert Hammond and Sandra Hammond purchased property located at 8124 Jasmine Hollow Court, Las Vegas, Nevada 89143-5154 (the Property). A deed of trust (Deed of Trust) in the amount of $272,000.00 was recorded against the Property on May 6, 2004, which listed the Hammonds as the borrowers and Mortgage Electronic Registration

Systems, Inc. (MERS) as beneficiary, solely as nominee for the lender and the lender's successors and assigns. The Deed of Trust secured the loan to purchase the Property, evidenced by the Note and Deed of Trust.

2. MERS assigned the Deed of Trust to Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWMBS, Inc., CHL Mortgage Pass-Through Trust 2004-12, Mortgage Pass Through Certificates, Series 2004-12 (BNY) on August 30, 2011. The assignment was recorded on September 29, 2011. A corrective deed of assignment was recorded on April 14, 2014.

3. The Hammonds also took out a $68,000.00 line of credit, which lender Countrywide Home Loans, Inc. secured with a second deed of trust recorded against the property.

4. The Hammonds failed to pay all amounts due to the homeowners association (HOA) that governed the Property. On June 8, 2011, the HOA, through its agent Nevada Association Services, Inc. (NAS), recorded a notice of delinquent assessment lien. Per the notice, the amount due to the HOA was $2,118.40, which included late fees, collection fees, and interest in the amount of $748.40.

5. On July 28, 2011, the HOA, through its agent NAS, recorded a notice of default and election to sell under homeowners association lien. The notice stated the amount due to the HOA was $2,245.50 as of July 26, 2011, but did not specify whether that amount included interest, fees, and collection costs in addition to assessments.

6. In 2011, Bank of America, N.A. was servicing the loan on behalf of BNY. On September 15, 2011, Bank of America's law firm, Miles Bauer, wrote to the HOA and NAS stating:

> Based on Section 2(b) [of NRS 116.3116], a portion of your HOA lien is arguably senior to BANA's first deed of trust, specifically the nine months of assessments for common expenses incurred before the date of your notice of delinquent assessment dated July 26, 2011 . . . . It is unclear, based upon the information known to date, what amount the nine months' of common assessments pre-dating the NOD actually are. That amount, whatever it is, is the amount BANA should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA.

7. NAS refused to provide Miles Bauer and Bank of America any information regarding the Hammonds' account without the Hammonds' written permission.

8. In some similar situations, Miles Bauer was able to research its many HOA foreclosure files and find sufficient information to calculate the superpriority lien amount. However, in this case, Miles Bauer did not have such information for the HOA governing the Hammonds' Property. Thus, it could not calculate the superpriority amount.

9. On February 23, 2012, the HOA, through its agent NAS, recorded a notice of foreclosure sale. The notice stated the total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses, and advances at the time of the initial publication of the notice of sale was $3,628.17.

10. The HOA foreclosed on the property on March 16, 2012. Defendant Williston Investment Group, LLC purchased the property at the sale for $7,500.00.

11. During the relevant timeframe, NAS had a policy and procedure of refusing to provide payoff information to anyone, including beneficiaries of first deeds of trust, without written authorization from the homeowner. Without payoff information from which Bank of America could calculate the superpriority amount, Miles Bauer could not pay off that amount.

////

12. Even where Bank of America or Miles Bauer could figure out the purported superpriority amounts for other properties (based on prior ledgers that Miles Bauer had in its business records), NAS had a policy and procedure of rejecting tender of the superpriority amount. Based upon many prior, similar situations, Miles Bauer knew of this before September 15, 2011, when it asked for the superpriority portion of the lien for this case. When Bank of America or Miles Bauer physically delivered the superpriority lien amount to NAS for other properties, NAS had consistently rejected the payments. NAS's policy was based on its belief that the superpriority portion of an HOA's lien also included interest, late fees, and collection costs, so it refused to accept a check conditioned on the statement the superpriority portion of the lien was "paid in full." Bank of America and Miles Bauer disagreed with that position, and they ultimately were deemed correct by the Supreme Court of Nevada.

13. Thus, even if Bank of America or Miles Bauer could have calculated the superpriority lien amount in this case, the HOA and NAS would have rejected their tender of the superpriority amount. Therefore, tender of a physical check to NAS was futile and excused.

14. Any finding of fact that should be a conclusion of law shall be construed as such, and vice versa.

### **CONCLUSIONS OF LAW**

**Burden of Proof**

1. "[E]ach party to a quiet title action has the burden of demonstrating superior title in himself or herself." *Res. Grp., LLC as Tr. of E. Sunset Rd. Tr. v. Nevada Ass'n Servs., Inc.*, 437 P.3d 154, 156 (Nev. 2019) (en banc); *see also Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1112 (Nev. 2016) (en banc) ("[T]he burden of proof rests with the party seeking to quiet title in its favor.") (citation omitted). Thus, Williston bears the burden

of proof on its claims against BNY, and BNY bears the burden of proof on its claims against Williston.

2. Further, deed recitals are not always conclusive. *See Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp.*, 366 P.3d 1105, 1110-11 (Nev. 2016) (en banc). To the extent there is any evidentiary value found in deed recitals, it is limited only to "default, notice, and publication," and statutory prerequisites to the sale. *Id.* at 1110. The recitals do not address the issues in this case, including tender and the equities of the sale.

**Quiet Title, Tender, and Excuse**

3. As a matter of law, because the HOA and NAS would have rejected BNY's tender of the superpriority amount, tender was futile and therefore excused.

4. As a matter of law, the Deed of Trust still encumbers the Property, and Williston's interest in the Property is subject to the Deed of Trust.

5. Under Nevada law, a "first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc) ("*Diamond Spur*"). To be valid, tender must be for "payment in full" and must either be "unconditional, or with conditions on which the tendering party has a right to insist." *Id.* at 118. "[A] promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender." *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1219 (Nev. 2019) ("*Jessup*") (holding that an "offer to pay the yet-to-be-determined superpriority amount was not sufficient to constitute a valid tender"). But tender is excused if the payment would not have been accepted. *Id.* at 1220. The Supreme Court of Nevada has rejected the argument that Bank of America's letters requesting superpriority payoff information

5

contained impermissible conditions. *Diamond Spur*, 427 P.3d at 118. The court also confirmed a "plain reading of [Nevada Revised Statutes § 116.3116(2)] indicates that" the superpriority amount is not comprised of the entire amount of the HOA's lien. *Id.* at 117. Rather, the superpriority amount consists of "only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id*. The court also stated that because a plain reading of the statute identified the superpriority amount, the law at the time of the HOA sale "was not undecided." *Id. Jessup* also reiterates "Miles Bauer had a right" to insist that payment of the superpriority amount would be payment in full sufficient to preserve the first priority position of the deed of trust. 435 P.3d at 1220 n.3.

6. A creditor can waive or excuse the delivery of payment by words or by conduct. *Id*. at 1220.

7. BNY, through Bank of America and Miles Bauer, was excused from delivering an actual check to NAS for the superpriority portion of the HOA's lien, if any existed. Miles Bauer's September 15, 2011 correspondence to NAS requested a payoff amount to satisfy the superpriority lien balance. Miles Bauer was unaware of the superpriority lien amount, but assured NAS that "whatever [that amount] is . . . [Bank of America] hereby offers to pay that sum upon presentation of adequate proof" by the HOA. NAS refused to respond to Miles Bauer's request, which was consistent with its policies and procedures at the time.

8. The HOA's foreclosure sale did not extinguish the Deed of Trust because Bank of America was excused from tendering the superpriority portion of the HOA's lien prior to the sale. NAS refused to provide any information to Bank of America that would allow Bank of America to tender the superpriority portion of the lien. And, Bank of America and Miles Bauer knew, based on their prior course of conduct with NAS and NAS's regular practices, that NAS would

not have accepted Bank of America's payment of nine months of assessments, based on NAS's incorrect reading of Nevada Revised Statutes Chapter 116.

9. In *Jessup*, Bank of America contended its obligation to tender the superpriority amount was excused because the HOA trustee stated it would reject any such tender if attempted. *Id.* at 1220. The Supreme Court of Nevada agreed with Bank of America that tender was excused due to representations made by the HOA's trustee in that case, including testimony from the HOA's trustee that the tender check would have been rejected. *Id.* at 1220. Here, Bank of America offered to pay nine months of assessments to NAS prior to the HOA foreclosure sale upon proof of the amount. NAS refused to respond to this request, and it was NAS's practice to reject Bank of America's checks for the superpriority amount as insufficient, meaning that any tender attempt by Bank of America would have been rejected. *See, e.g., RH Kids, LLC v. MTC Fin'l*, 367 F. Supp. 3d 1179, 1186 (D. Nev. 2019) ("Accordingly, the Court finds that Bank of America was excused from sending valid tender because Nevada Association Services made it clear that it would reject that tender and proceed with its planned foreclosure.").

10. NAS's policy of rejecting tender of payment had been established and was well-known by Bank of America and Miles Bauer when the HOA sale occurred in this case.

11. Tender is an "offer to perform, coupled with the present ability of immediate performance, which, were it not for the refusal of cooperation by the party to whom tender is made would immediately satisfy the condition or obligation for which the tender is made." *Jessup*, 435 P.3d at 1219 (quoting *Graff v. Burnett*, 414 N.W. 2d 271, 276 (Neb. 1987)).

12. "A tender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, it will not be

7

accepted." 74 Am. Jur. 2d *Tender* § 4.[1] The evidence presented at trial proved that Bank of America did not submit a superpriority payment because NAS refused to provide it with sufficient information to calculate the superpriority amount, neither it nor Miles Bauer had independent information to calculate that amount, and Bank of America and Miles Bauer knew that NAS would have rejected a payment of only nine months of assessments. *Cf.*, *Nationstar Mortg., LLC v. 2016 Marathon Keys Tr.*, No. 75967, 455 P.3d 842, 2020 WL 407057, at *1 (Nev. 2020) (rejecting an argument that tender should be excused because "no evidence indicates that Miles Bauer decided not to make a payment because it could not calculate the superpriority amount or because it knew ACS would reject a superpriority tender"); *Bank of Am., N.A. v. Las Vegas Rental & Repair, LLC Series 57*, No. 76914, 451 P.3d 547, 2019 WL 6119134, at *1 n.3 (Nev. 2019) (rejecting the lender's "excused-for-futility argument" because it was "not supported by any evidence" where "no evidence suggests that Miles Bauer decided not to tender because it knew NAS would reject it."). Therefore, Bank of America was excused from submitting an actual payment.

13. Because Bank of America was excused from tendering a check for the superpriority debt, it does not matter whether Williston is a bona fide purchaser. *Diamond Spur*, 427 P.3d at 121.

**Deceptive Trade Practices**

14. The Fifth Cause of Action of BNY's complaint asserts the HOA and NAS engaged in deceptive trade practices by (1) falsely representing the amount of the superpriority lien in the foreclosure notices, (2) falsely asserting the information contained in the recitals in the foreclosure

---

[1] The Supreme Court of Nevada has relied on Am. Jur. in cases involving tender, including this specific section. *See Jessup*, 435 P.3d at 1220 (quoting this section); *see also Diamond Spur*, 427 P.3d at 117 (citing a different section on tender).

deed, and (3) falsely representing that the superpriority lien was not paid in advance of the sale. BNY also alleges that recording the foreclosure notices and refusing to accept tender violated Nevada Revised Statutes §§ 598.0915(15) and 598.092(8).

15. Nevada Revised Statutes § 41.600 creates a cause of action for a victim of "consumer fraud," which includes deceptive trade practices identified in § 598.0915 to § 598.0925. Section 598.092(8) makes it a deceptive trade practice to "[k]nowingly misrepresent[] the legal rights, obligations or remedies of a party to a transaction." And § 598.0915(15) makes it a deceptive trade practice to "[k]nowingly make[] any other false representation in a transaction." In prior orders, I held these two sections could apply to a real estate transaction like an HOA foreclosure sale. Moreover, the statutes could apply to BNY, because NRS § 41.600 is not limited to a party to the transaction in which the deceptive trade practice occurs. Rather, § 41.600 permits "any person who is a victim of consumer fraud" to bring suit. And the statute does not limit consumer fraud claims to unsophisticated plaintiffs.

16. BNY failed to prove its deceptive trade practices claim against NAS.[2]

17. BNY contends that the HOA "and NAS's refusal to accept the superpriority portion of the HOA's lien, and then proceeding to foreclosure, constituted a violation under NRS 598.0915(15)." ECF No. 1 at 14, ¶ 72. But BNY never tendered the superpriority portion of the HOA's lien, so this allegation was not sustained at trial.

18. Neither the HOA nor NAS made any false statements prior to the foreclosure sale, at the foreclosure sale, and through the foreclosure deed that constitute violations of the Nevada Deceptive Trade Practices Act. They did not state an incorrect amount of the HOA's lien.

---

[2] BNY settled its disputes with the HOA so the HOA did not participate in the trial. ECF Nos. 98, 101. Thus, I have not considered BNY's claims against the HOA.

9

19. Nor did they violate Nev. Rev. Stat. §§ 598.092(8) or 598.0915(15) by refusing to include in the notices the amount of the superpriority portion of the lien. The Supreme Court of Nevada has rejected the argument that the notices must provide the superpriority amount in part because "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc), *superseded by statute on other grounds as stated in Saticoy Bay LLC 9050 W Warm Springs 2079 v. Nev. Ass'n Servs.*, 135 Nev., Adv. Op. 23, 444 P.3d 428 (2019). *See also PennyMac Corp. v. SFR Investments Pool 1, LLC*, 425 P.3d 719, *3 (Nev. 2018) ("the notice of default was not required to indicate whether the HOA was asserting a superpriority lien right or identify the superpriority lien amount").

20. BNY did not prove that NAS's refusal to provide the superpriority amount to Miles Bauer without permission from the Hammonds was a knowing misrepresentation of the "rights, obligations, or remedies of a party to a transaction" (§ 598.092(8)) or a "false representation in a transaction" (§ 598.0915(15)).

21. I therefore deny BNY's deceptive trade practices claim against NAS.

**BNY'S Other Claims**

22. The Second Cause of Action of BNY's complaint asserts a claim against NAS for breach of Nevada Revised Statutes § 116.1113. BNY pleaded that claim in the alternative, in case I found BNY's Deed of Trust was extinguished by the HOA foreclosure sale. *See Id*. at 12, ¶ 58. Because BNY's Deed of Trust is not being extinguished, I deny this claim as moot.

23. The Third Cause of Action of BNY's complaint asserts a claim against NAS for wrongful foreclosure. That claim, too, was pleaded in the alternative. *See* ECF No. 1 at 11, ¶ 51. Because BNY's Deed of Trust is not being extinguished, I deny this claim as moot.

24. The Fourth Cause of Action of BNY's complaint seeks a preliminary injunction barring Williston from selling or encumbering the subject property and requiring Williston to pay all taxes, insurance, and HOA dues during the pendency of this case. BNY offered no evidence or argument on this claim at trial, so I deny it.

**CONCLUSION**

I HEREBY ORDER that judgment should be entered in favor of BNY on its claim for quiet title and declaratory relief (First Cause of Action), that BNY's Deed of Trust was not extinguished and still encumbers the Property, and Williston's interest in the Property is subject to the Deed of Trust. The clerk of court is instructed to enter judgment in favor of plaintiff Bank of New York Mellon against defendant Williston Investment Group LLC as follows: It is declared that the homeowners association's non-judicial foreclosure sale conducted on March 16, 2012 did not extinguish BNY's deed of trust, and the property located at 8124 Jasmine Hollow Court, Las Vegas, Nevada remains subject to BNY's deed of trust.

I FURTHER ORDER that BNY's claims against NAS for breach of Nevada Revised Statutes § 116.1113 (Second Cause of Action) and for wrongful foreclosure (Third Cause of Action) are denied as moot.

I FURTHER ORDER that BNY's claim against Williston for a preliminary injunction (Fourth Cause of Action) is denied.

I FURTHER ORDER that BNY's claim against NAS for violations of the Nevada Deceptive Trade Practices Act (Fifth Cause of Action) is denied. The clerk of the court is directed to enter judgment in favor of NAS and against BNY on this claim.

I FURTHER ORDER that Williston Investment Group LLC's counterclaims for declaratory relief (First Claim for Relief) and quiet title (Second Claim for Relief) (ECF No. 14) are denied.

I FURTHER ORDER the clerk of the court to enter judgment accordingly. A copy of this Order may be recorded in the Official Records of Clark County.

Dated: February 12, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE